UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VLADIMIR SKLAROV,<br>    a/k/a "Val Sklarov,"<br>    a/k/a "Gregory Mitchell,"<br>    a/k/a "Mark Simon Bentley,"<br><br>                    Defendant. | **SEALED INDICTMENT**<br><br>26 Cr.<br><br>**2 6 CRIM   165** |

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

1. From at least in or about 2021, up to and including at least in or about 2024, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, operated an entity called Astor Asset Group ("Astor") that held itself out as a legitimate and experienced provider of stock-backed loans affiliated with the prominent Astor family. In reality, SKLAROV and his co-conspirators had no such affiliation, and instead ran a sham company designed to steal valuable stock through lies and misleading representations.

2. Beginning in or about March 2021, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, schemed to and did use Astor to defraud a victim ("Victim-1") of at least approximately $450 million through the operation of a purported stock-backed lending agreement ("SLA"). SKLAROV made false and misleading representations in order to induce Victim-1 to transfer valuable shares in a company owned by Victim-1 (the "Company Shares") as collateral for a purported stock-backed loan. Victim-1 received no such loan. Instead, soon after Victim-1 transferred the Company Shares,

SKLAROV sold them; used some of the proceeds from the sale of Victim-1's own property to fund the purported loan; and kept the hundreds of millions of dollars in remaining proceeds for himself and other members of the scheme. SKLAROV's scheme generally operated as follows:

a.      In or about the Spring of 2021, Victim-1, through a representative ("Representative-1"), sought a loan in excess of approximately $100 million that Victim-1 intended to secure using the Company Shares. SKLAROV and other members of the scheme indicated that Astor was willing and able to fund the loan. Representative-1 was provided, on behalf of Astor, various promotional materials that falsely claimed, among other things, that the company was "[o]riginally set up on the foundations of the wealth of John Jacob Astor"; "built on the traditions and principals pioneered by John Jacob Astor"; and had various prominent "family offices, foundations and endowments, official institutions, and pension funds" as clients. At all times during the scheme, SKLAROV hid and lied about his true identity and instead claimed to be "Gregory Mitchell," the "Managing Director" of Astor. Another individual acting at SKLAROV's direction ("CC-1") also used an alias and falsely claimed to be "Thomas Mellon," the "CEO" of Astor.

b.      On or about May 24, 2021, SKLAROV, falsely representing to be "Gregory Mitchell," and CC-1, falsely representing to be "Thomas Mellon," respectively, appeared on a video call with another representative of Victim-1 ("Representative-2") to discuss entering into the purported SLA. During the meeting, and at other times, SKLAROV and CC-1 falsely described Astor, in sum, as a legitimate firm with a history of engaging in stock-backed loans and that Astor would fund the loan with its own capital, which included capital provided directly by the Astor family.

2

c.    In addition to lying about his own identity and the identity, history, and intentions of Astor, SKLAROV and other members of the scheme falsely represented to Representative-1 and Representative-2 that the Company Shares would not be sold unless Victim-1 defaulted on the loan.

d.    In or around July 2021, based on the misrepresentations made by SKLAROV, Victim-1 agreed to enter into the SLA with Astor.  Under the terms of the loan, SKLAROV agreed to lend Victim-1 at least approximately $115 million and Victim-1 agreed to post the Company Shares as collateral, on the understanding that the Company Shares would not be sold or transferred absent a default.

e.    From approximately June 2021 through September 2023, Victim-1 transferred several different tranches of Company Shares to various custodial accounts (the "Custodians"), as dictated by SKLAROV, as Victim-1 continued to draw upon the loan. The value of the Company Shares transferred by Victim-1 far exceeded the value of the loan.  In total, Victim-1 transferred at least approximately $450 million in Company Shares to the Custodians during the course of the loan.

f.    Shortly after the first tranches of Company Shares were transferred to the Custodians, SKLAROV and others stole the Company Shares.  Specifically, SKLAROV and others sold the Company Shares; liquidated the proceeds; and transferred the proceeds to multiple different accounts controlled by CC-2, another member of the scheme (the "CC-2 Accounts"). CC-2 then transferred the proceeds from the stolen Company Shares from the CC-2 accounts to various accounts controlled by SKLAROV, his family members, and other scheme participants. In addition to keeping the proceeds from the sale of Company Shares for himself, and despite representing that the loan would be funded with Astor's own capital, SKLAROV and others also

3

used the proceeds from the sale of the Company Shares to fund each tranche of the loan to Victim-1. Throughout 2021, 2022, and 2023, SKLAROV and others continued to steal each new tranche of Company Shares within days of the Shares being deposited with the Custodians by Victim-1.

g. At various points throughout the loan term, as the Company Shares were being sold off, SKLAROV and other members of the scheme falsely represented to Representative-1 and Representative-2 that the Company Shares had not been liquidated and were safe with the Custodians. For example, in or about November 2023, purported representatives of Astor met with Representative-1 in Manhattan to discuss the loan. Representative-1 asked the purported Astor representatives about moving the Company Shares to a different, more established custodian. During that meeting, the purported Astor representatives never revealed that almost all the Company Shares were no longer in the possession of any custodian and had already been liquidated.

h. In or about June 2024, Representative-1 and Representative-2 inquired with the Custodians as to the status of the Company Shares but did not receive a response. On or about June 13, 2024, Victim-1 and Representative-1 received an email and unsigned letter from Astor's "Operations" department. In the letter, Astor "Operations" asserted, for the first time, that Astor had an unrestricted right to sell the Company Shares.

i. On or about July 29, 2024, Victim-1 and Representative-1 learned that the vast majority of the Company Shares had already been liquidated from the accounts held with the Custodians. On or about July 30, 2024, Representative-1 received another unsigned letter from Astor's "Global Operations" department that falsely claimed that Victim-1 had defaulted on the loan and purported to provide a "notice of default."

4

j.      Shortly after receiving this "notice of default," Representative-1 and Victim-1 learned that the "Gregory Mitchell" with whom Representative-1 had communicated throughout the course of the loan was in fact SKLAROV, and that "Thomas Mellon" was in fact CC-1.

k.      Despite abiding by the terms of the SLA for the entire term of the loan, Victim-1 never recovered any of the Company Shares.

### Statutory Allegations

3.      From at least in or about 2021 up to and including at least in or about 2024, in the Southern District of New York and elsewhere, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

4.      It was a part and an object of the conspiracy that VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, SKLAROV agreed with others to engage in scheme to make false and misleading representations in order to fraudulently induce Victim-1 to enter into the SLA, and to obtain and liquidate Victim-1's Company Shares, and sent and received, and caused others to send and receive, emails and other electronic communications, to and from

5

the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

5.    The allegations contained in Paragraphs 1 and 2 of this Indictment are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

6.  From at least in or about 2021 up to and including at least in or about 2024, in the Southern District of New York and elsewhere, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, SKLAROV made false and misleading representations in order to fraudulently induce Victim-1 to enter into the SLA, and to obtain and liquidate Victim-1's Company Shares, and sent and received, and caused others to send and receive, emails and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

7.  The allegations contained in Paragraphs 1 and 2 of this Indictment are hereby

6

repeated, re-alleged, and incorporated by reference as if fully set forth herein.

8. From at least in or about 2021 up to and including at least in or about 2024, in the Southern District of New York and elsewhere, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

9. It was a part and an object of the conspiracy that VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

10. As a result of committing the offenses alleged in Counts One and Two of this Indictment, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all

property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

11. As a result of committing the offense alleged in Count Three of this Indictment, VLADIMIR SKLAROV, a/k/a "Val Sklarov," a/k/a "Gregory Mitchell," a/k/a "Mark Simon Bentley," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

12. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
28, United States Code, Section 2461.)

FOREPERSON

4/30/26

Jay Clayton

JAY CLAYTON
United States Attorney

9